# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMES KALISZUK

       Plaintiff,                          Case No.

v.                                                  Hon.

SILVER MAPLES OF CHELSEA

       Defendants.

---

Noah Hurwitz (P74063)
NACHT & ROUMEL, P.C.
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
Nhurwitz@nachtlaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff states her complaint as follows:

### Parties/Jurisdiction/Venue

1. Plaintiff James Kaliszuk ("Plaintiff") a male who resides in Royal Oak, Oakland County, Michigan.

2. Defendant Silver Maples of Chelsea ("Defendant") is a business located in Washtenaw County, Michigan, and Plaintiff's former employer.

3. The events described in this lawsuit occurred in Washtenaw County, Michigan.

4. The jurisdiction of this court is invoked pursuant to Title I of the Americans with Disabilities Act ["ADA," 42 USC §12101 et seq].

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Plaintiff's claims took place and where Defendant regularly conducts business.

6. Plaintiff has exhausted his administrative remedies by filing a charge with the Equal Employment Opportunity Commission ["EEOC"] on or about February 1, 2021, alleging disability discrimination and retaliation.

7. After the EEOC completed processing the charge, it sent Plaintiff a "Right to Sue" letter, dated June 9, 2021.

8. Plaintiff has timely filed this lawsuit, also generally alleging disability discrimination and retaliation.

## GENERAL ALLEGATIONS

9. Plaintiff was Defendant's Director of Facility Operations from July 20, 2021 until January 13, 2020.

10. From the outset of his employment, Defendant's Executive Director and CEO (Julie Deppner) inquired into Plaintiff's personal matters, including his daughter's mental health and sexual orientation.

11. Ms. Deppner would then question Plaintiff about his own mental health condition.

12. On September 30, 2020, Ms. Deppner asked Plaintiff whether his daughter's bipolar disorder was "genetic" and wondered, "which parent it came from?"

13. On October 14, 2020, Ms. Deppner pried into the circumstances of Plaintiff's childhood experiences and relationship with his parents. She speculated that he might have "trust issues."

14. On December 9, 2020, Ms. Deppner asked Plaintiff whether he "suffered from depression or a similar disorder" and whether he "ever received treatment of any kind for [his] emotional state." Plaintiff admitted to Ms. Deppner that he was presently being treated for an anxiety disorder.

15. The ADA "limits the scope of information that employers may seek and disclose about their employees' medical condition." 42 U.S.C. § 12112(d).

16. During a person's employment, the employer may only make a disability-related inquiry when the examination or inquiry is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

17. Defendant crossed the bounds of the law by inquiring about Plaintiff's mental health.

18. After learning that Plaintiff suffered from a mental health condition, Defendant retaliated against Plaintiff by placing issuing him a "Performance Plan" on December 23, 2020 (effective January 1, 2021).

19. The Performance Plan highlighted four nebulous areas of focus for Plaintiff and nine "specific Actions."

20. After Plaintiff completed several "Actions" and performed at a high level during the first two weeks of 2021, Defendant inexplicably terminated him on January 13, 2020 for events purportedly occurring at a meeting the previous day.

21. It was during a meeting on January 12, 2021 to discuss Defendant's capital budget that Ms. Deppner berated coworker Jay Butler and then treated Plaintiff with hostility.

22. During the meeting on January 12, 2021, Ms. Deppner accused Plaintiff of being "emotional," which was a veiled attack on his mental health condition.

23. Ms. Deppner expelled Plaintiff from the January 12, 2021 meeting.

24. On January 13, 2021, Ms. Deppner attempted to immunize Defendant from liability by asking Plaintiff to sign a resignation letter that was devoid of consideration (*i.e.*, severance pay).

25. After Plaintiff refused to resign, Defendant unceremoniously terminated Plaintiff on January 13, 2021.

26. Ms. Deppner inquired about Plaintiff's mental health immediately prior to instituting discipline and then terminating him.

27. The day prior to his termination, a coworker confided in Plaintiff that Ms. Deppner was on a "fishing expedition to find dirt" on Plaintiff.

28. Plaintiff is a person with a disability in the form of a mental health condition.

## COUNT I
## Improper Medical Inquiries and Discrimination Under the Americans with Disabilities Act, 42 U.S.C. § 12112(d)

28. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

29. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the Americans with Disabilities Act of 1990, (42 USC § 12101 et seq., "the ADA"), as he had mental impairments that substantially limited him in the performance of major life activities, as set forth above, and/or was perceived as having a disability.

30. The ADA "limits the scope of information that employers may seek and disclose about their employees' medical condition." 42 U.S.C. § 12112(d).

31. During a person's employment, the employer may only make a disability-related inquiry when the examination or inquiry is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

32. Defendant inquired into Plaintiff's mental health condition without any permissible business justification.

33. Defendant became aware of Plaintiff's disability through unlawful medical inquiries.

5

34. Defendant then used the information gleaned from its unlawful medical inquires to punish and terminate Plaintiff.

35. As a result, Plaintiff was harmed, and continues to be harmed, in that he was terminated from his job and has suffered economic and non-economic loss, including but not limited to, lost wages, damage to his professional reputation, emotional distress, outrage and humiliation.

36. Under the ADA, an aggrieved person may be entitled to compensatory damages, injunctive relief, and attorney fees.

## COUNT II
### Retaliation Under Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

37. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

38. As stated above, Plaintiff has a disability as defined by the Americans with Disabilities Act.

39. Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

40. Defendant retaliated against Plaintiff after unlawfully inquiring about Plaintiff's mental health condition and then learning that Plaintiff had a mental health condition, in violation of the ADA, 42 U.S.C. § 12203, by and through its act of terminating Plaintiff's employment and replacing him.

6

41. Defendant's actions in violation of the ADA were willful.

42. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

43. As a further direct and proximate result of Defendants' violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a. award his damages in an amount to be determined at trial;

b. back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits;

c. compensatory damages and exemplary damages, including pain and suffering and other emotional damages, and punitive damages;

d. post-judgment assignment of attorney's fees, costs, and interest; and

  e. any other relief to which Plaintiff may be entitled.

            Respectfully submitted,
            NACHT & ROUMEL, P.C.

            /s/ Noah S. Hurwitz
            Noah Hurwitz (P74063)
            Attorney for Plaintiff
            101 N. Main Street, Ste. 555
            Ann Arbor, MI 48104
            (734) 663-7550
Dated: July 6, 2021      NHurwitz@nachtlaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAMES KALISZUK

      Plaintiff,                  Case No.

v.                                  Hon.

SILVER MAPLES OF CHELSEA

      Defendants
_____

Noah Hurwitz (P74063)
NACHT & ROUMEL, P.C.
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
*(734) 663-7550*
NHurwitz@nachtlaw.com
_____

## **DEMAND FOR TRIAL BY JURY**

Plaintiff James Kaliszuk, by and through his attorneys, **NACHTLAW, P.C.**, and hereby demands for a trial by jury, for all issues so triable.

Respectfully submitted,

                                            NACHT & ROUMEL, P.C.

                                            /s/ Noah S. Hurwitz
                                            Noah Hurwitz (P74063)
                                            Attorney for Plaintiff
                                            101 N. Main Street, Ste. 555
                                            Ann Arbor, MI 48104
                                            (734) 663-7550

Dated: July 6, 2021                      *NHurwitz@nachtlaw.com*